UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOHN D. NELLIST,

    Plaintiff,

    v.                                                CAUSE NO. 3:22-CV-921-JD-JEM

INDIANA DEPT OF CORRECTIONS, et al.,

    Defendants.

## OPINION AND ORDER

John D. Nellist, a prisoner without a lawyer, filed a complaint alleging a multitude of wrongs and containing seemingly unrelated claims. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

As an initial mater, Nellist did not use this court's approved prisoner complaint form. Pursuant to Northern District of Indiana Local Rule 7-6, he is required to use this court's Prisoner Complaint Pro Se 14 (INND Rev. 2/20) form. He will therefore be

required to amend his complaint and use that form, although there are other deficiencies that must also be addressed.

Nellist is suing the Indiana Department of Correction, Warden William Hyatte, Deputy Warden George Payne, and Grievance Specialist Sgt. Michael Gapski for a series of alleged wrongs dating back to 2018. Nellist indicates that he was enrolled in a college program at Westville Correctional Facility prior to his transfer to Miami Correctional Facility in 2018. Nellist explains that, following his transfer, Miami Correctional Facility had staffing and supply issues caused by the COVID-19 pandemic. He wants to be transferred back to Westville Correctional Facility to finish his degree, but he does not indicate that any defendant was personally involved in denying his requested transfer.[1]

By 2019, Nellist had several health problems. He was unhappy with the care (or lack of care) he received for smoke inhalation, a dental problem, and several neoplasms. He also suffers from cognitive impairments, a borderline personality with manic characteristics, and attention deficit hyperactivity disorder. His mental health needs related to these conditions were allegedly neglected while he was housed at the Miami Correctional Facility.[2] The complaint, however, does not suggest that any defendant was personally involved in denying him medical care for these conditions.

---

[1] Nellist is now housed at the Putnamville Correctional Facility. ECF 18.

[2] The complaint includes a request that the court appoint an attorney to represent Nellist due to the scope of his disabilities. This request is premature, as the court has not yet had an opportunity to adequately evaluate either the difficulty of this case or Nellist's abilities. *See Romanelli v. Suliene*, 615 F.3d 847, 852 (7th Cir. 2010) ("[T]he case [is] still in its infancy, thereby making it impossible at [this] juncture to make any accurate determination regarding [the plaintiff's] abilities" or the difficulty of the case.). Preliminarily,

2

At some point (he does not say when), Nellist developed symptoms consistent with COVID-19, and a nurse placed him in quarantine. He had not been tested for COVID-19, but he was subsequently exposed while quarantined. He was also deprived of access to his property and suffered harsher conditions while quarantined. The complaint does not suggest that any defendant was involved in the decision to place Nellist in quarantine.

Nellist also indicates that, at the time he filed his complaint, he had not been in a law library or had access to a word processor in four years. He has poor penmanship due to a hand injury, and his request for access to a word processor as an accommodation under the Americans with Disabilities Act, 42 U.S.C. § 12132, was denied. His inability to use a word processor has allegedly prevented him from expressing himself through written articles for publication. Nellist does not indicate that any defendant named in this lawsuit was personally responsible for his lack of access to the law library or a word processor. He also does not indicate that any defendant named in this lawsuit was personally responsible for denying his requests for an accommodation pursuant to the ADA.[3]

Nellist claims he was intentionally set up to be attacked by inmates. However, he provides no facts linking the attack to any defendant named in this lawsuit or other details regarding the alleged incident.

---

however, the complaint suggests Nellist does not lack the competence necessary to express himself to the court.

[3] Additionally, he provides no details about when or how he made his request for accommodation, and he provides no details regarding the basis for the denial of his request.

3

Nellist also claims that there is a policy of not responding to grievances. He says he has filed over 100 grievances, and he believes he has been retaliated against for filing those grievances. The complaint, however, does not allege that any named defendant was involved in retaliating against Nellist.

The complaint contends that Warden Hyatte, Assistant Warden Payne, and Grievance Specialist Gapski are liable because they are in charge of the facility, its policies, and the training of other staff.[4] There is no general respondeat superior liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id*. at 596. To be held liable, a supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012).[5] There are not factual allegations in the complaint from which it can be plausibly inferred that Warden Hyatte, George Payne, or Michael Gapski facilitated, approved, condoned, or turned a blind eye to any constitutional violation.

Furthermore, Nellist recognizes that he brought this lawsuit more than two years after some of the events described in the complaint. Suits filed under § 1983 borrow the

---

[4] Failure to train and supervise claims can only be brought against a municipality. *Sanville v. McCaughtry*, 266 F.3d 724, 739–40 (7th Cir. 2001) *citing Farmer v. Brennan*, 511 U.S. 825, 841 (1994) (affirming dismissal of failure to train and supervise claims brought against State warden). The defendants are not municipalities.

[5] Nellist also referrers to his claims as arising under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), which holds that a municipality may only be held liable for constitutional violations caused by the municipality through its own policy, practice, or custom. His reliance on *Monell* is misplaced, as it applies to municipalities.

4

statute of limitations for state personal injury claims, which in Indiana is two years. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). This lawsuit was filed on November 1, 2022, and concerns events occurring as far back as 2018 and 2019. In an effort to overcome the statute of limitations problem, Nellist requests that his complaint be construed as one continuing violation. A series of otherwise unrelated wrongs do not amount to a continuing violation merely because they took place at the same facility. While some of the circumstances giving rise to this complaint may have been ongoing, many were not.

      To the extent that Nellist's claims are not continuing violations, he argues that equitable tolling should apply because he was prevented from accessing the grievance system, tort system, and facilities necessary to overcome his disabilities. When a federal claim is controlled by a state statute of limitations, a federal court looks to state law to decide whether the statute of limitations should be tolled for equitable reasons. *Hardin v. Straub*, 490 U.S. 536, 538-39 (1989). None of the reasons raised by Nellist are a basis for equitable tolling under Indiana law. *See Trzeciak v. State Farm Fire & Cas. Co.*, 809 F.Supp.2d 900, 911-12 (N.D. Ind. 2011) (summarizing Indiana law governing equitable tolling). Furthermore, Nellist did not need access to the grievance system to file his complaint; he was only required to exhaust administrative remedies that were available to him. *See Woodford v. Ngo*, 548 U.S. 81, 102 (2006). Nellist likewise did not need to file a tort claim prior to bringing his federal claims. As for the lack of access to a computer or word processor, Nellist's lengthy complaint demonstrates that he is literate and able to express himself to the court, despite his hand injury. Because Nellist's complaint does

not contain specific dates for any of his allegations (it merely alleges generally that these things began in 2018 or 2019), the court cannot determine which claims may be barred by the statute of limitations.

In short, there are a variety of problems with Nellist's complaint. He used the wrong form. He did not link the defendants to the alleged wrongs. He did not provide specific dates (or even approximate dates) for the various alleged wrongs. And, he appears to have a statute of limitations problem. Furthermore, because Nellist has not provided sufficient details regarding his allegations, the court cannot determine if the claims are sufficiently related to be litigated in the same action. He is, however, cautioned that the wide array of claims he is attempting to bring here do not appear to be related, and he may not sue different defendants based on unrelated events in a single lawsuit. "Unrelated claims against different defendants belong in different suits . . .." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). *See also Owens v. Evans*, 878 F.3d 559, 566 (7th Cir. 2017).

Nellist will be granted an opportunity to file an amended complaint containing only related claims. *Luevano v. WalMart Stores, Inc.*, 722 F.3d 1014, 1022-23, 1025 (7th Cir. 2013); *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). If he decides to file an amended complaint, he must use this court's approved prisoner complaint form, as required by Northern District of Indiana Local Rule 7-6. He does not need to use legal phrases, cite to legal authority, or provide legal analysis; he simply needs to explain in his own words what happened, when it happened, where it happened, who was involved, and how he was personally injured, providing details about what occurred

but avoiding legal phrases and citations. He should use each defendants name every time he references them in the complaint.

For these reasons, the court:

(1) DIRECTS the clerk to put this case number on a blank Prisoner Complaint Pro Se 14 (INND Rev. 2/20) form and send it to John D. Nellist along with a blank Prisoner Complaint Pro Se 14 (INND Rev. 2/20) form;[6]

(2) GRANTS John D. Nellist until **October 17, 2023**, to file an amended complaint containing only related claims on the form with this case number sent to him by the clerk; and

(3) CAUTIONS John D. Nellist if he does not respond by the deadline, this case will be dismissed without further notice.

SO ORDERED on September 18, 2023

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT

---

[6] Should Nellist require additional forms, he may request them from the clerk.